**ALAMO NAT. BANK OF SAN ANTONIO**
**v. HAZLITT et ux.**

No. 3307.

Court of Civil Appeals of Texas. El Paso.

March 5, 1936.

Rehearing Denied March 26, 1936.

Anthony Bruce, of New York City, and Nat L. Hardy and T. M. West, both of San Antonio, for appellant.

Carter & Lewis, H. C. Carter, Champe G. Carter, and Randolph L. Carter, all of San Antonio, for appellees.

HIGGINS, Justice.

The Alamo National Bank maintains, in the basement of the banking building owned by it, a safety box department. A stairway six feet wide leads to the floor of the basement. The steps were of Traventine, a quarried stone imported from Italy, and being a species of marble. Mrs. Mathilde L. Hazlitt rented one of the boxes. On February 10, 1933, she undertook to descend the stairway for the purpose of using her box. In so doing she slipped upon the stairway and fell, inflicting personal injuries. She and her husband brought this suit against the bank to recover damages.

The issues of negligence presented by the pleadings are sufficiently indicated by the findings. Briefly the findings are:

(1) Defendant's stairway was slick and slippery; (2) defendant was negligent in permitting said condition to exist; (3) such condition was the proximate cause of Mrs. Hazlitt's injuries; (4) defendant failed to have rubber step coverings upon the steps in the stairway; (5) this was negligence; (6) this was the proximate cause of, Mrs. Hazlitt's injuries; (7) defendant failed to provide handrails down the center of the stairway; (8) this was negligence; (9) this was the proximate cause of plaintiff's injuries; (10) Mrs. Hazlitt did not have any substance of a slick and slippery nature upon the heels of her shoes; (11) the defendant failed to provide any shoe-wiping pads or mats on the occasion in question; (12) Mrs. Hazlitt was not guilty of contributory negligence; (13) she was not wearing shoes with a defective heel; (14) her fall was not the result of an unavoidable accident; (15) her damages amount to $5,000.

Judgment was rendered for the damages assessed, from which the bank appeals.

Appellant questions the sufficiency of the pleadings and evidence to show negligence on its part. It says the stairway was constructed according to design and from materials customarily used for such purposes and ordinarily found to be safe,

**316**

and no structural defect being shown or any obstruction or foreign substance upon the steps, no negligence is shown. The soundness of this proposition in the abstract may be conceded, but by a number of witnesses it was shown the steps had become polished, slick, and very slippery. It was also shown defendant habitually used upon the steps a cleansing compound with soap in it which tended to increase the slippery condition. This evidence shows the step had been permitted to become and remain unsafe and raised an issue of negligence upon appellant's part.

Upon the issue respecting rubber step coverings, the witness Hudlow testified:

"Q. What effect and to what extent would the placing of rubber covering, treads on those steps add to the safety and the prevention of slipping, Mr. Hudlow? A. It would naturally tend to reduce the slippery effect. Of course, it is purely a safety measure.

"Q. Purely a safety measure? A. Yes, sir.

"Q. With the steps in the condition you know they were, without any such device or safety measure, state whether or not they were calculated to cause people to slip on them? * * * A. Oh, yes, they are. And steps of that kind are dangerous without safety treads.

"Q. Part of your business is selling rubber floor covering? A. Yes, sir.

"Q. And has been for the last twenty-seven years? A. Yes, sir. Not that that is the largest line, but I am selling that item.

"Q. Have you ever sold marble?· A. Have I ever sold marble?

"Q. Yes, sir? A. I have covered lots of it.

"Q. And this is your sales talk that you gave on the witness stand? A. Well, if you want to look at it that way you can call it a sales talk, it is the sale of a necessary thing to have."

Mr. Stillman testified:

"Q. In your opinion, as an expert in these matters, Mr. Stillman, state whether or not anything should have been done to the stairway to make it less slippery or to prevent slipping on it, and, if so, what? A. Well, the only way I can answer that question, Mr. Carter, is in this way, if it is permissible,—if I were designing a stairway for a place of that kind, I would de-

sign that stairway, make it with something to resist and prevent slipping, and there are a great many different methods that can be and are used.

"Q. What are some of the methods? * * * A. Well, one way that is very fine to use is to roughen up the tread itself—if it is marble, they dope it, if it is cement, they dope it a little, or, on the other hand, another method is inserting a metal plate at the front of the tread, or corrugated rubber, or a metal plate made out of iron or brass or copper.

"Q. And a very good method is by the use of what we call a rubber tread, such as I have here. A. The corrugated tread put on there is cemented on by special cement that is made for that purpose.

"Q. The use of rubber treads would be the least expensive type you know? A. Yes, sir, the least expensive and most efficient.

"Q. Mr. Stillman, state whether or not these rubber treads come in different colors to match the different types of stone or marble? A. Yes, they do.

"Q. What do the rubber treads have on top of them, Mr. Stillman, to prevent slipping? A. They are corrugated.

"Q. In your opinion, Mr. Stillman, please state whether or not such rubber treads or some non-slip device should be used on steps of such a nature as those that you saw and know of leading from the Alamo Bank lobby down into the basement?

"Mr. Hardy: We have the same objection."

"Q. Now, what effect does that have on the slipping of people walking on the stairs? A. Well, a foot will not slip on this, but it will slip on the plain surface, whether marble, tile or wood, or anything else with a slick surface."

Defendant's witness Molberg testified:

"Q. Mr. Molberg, as a man experienced in these matters, do you know the purpose of putting rubber treads on stairways on certain steps? * * * A. On certain steps, yes, sir.

"Q. What effect does it have? A. Keeps you from slipping.

"Q. Keeps you from slipping? A. Yes, sir."

Defendant's witness Meier testified:

"Q. Don't you think, as a matter of fact, Mr. Meier, that it is customary to cover

such marble steps with rubber treads to prevent slipping on them? A. Well, I really don't, Judge.

"Q. Well, you wouldn't deny that? A. Well, I wouldn't deny that, either.

"Q. I say, such marble steps as those, wouldn't it tend to prevent slipping and would make the steps safer, to have the rubber treads cemented over them? A. Oh, it probably would as long as they were in good shape.

"A. * * * You take granite, marble, and things like that, and there is no slip in it except where the wear is on it; of course, if it gets smooth you might slip on it."

There is also evidence from which the jury might properly have found, as it did find, that under the circumstances it was negligence on the part of defendant not to have a center handrail down the stairway. There is no occasion to further encumber this opinion by quoting same. The evidence raises the issues of negligence submitted and such issues were properly pleaded. The assignments questioning the sufficiency of the pleadings and evidence to show negligence are therefore overruled.

■ Another proposition asserts the condition of the stairway was obvious and known to Mrs. Hazlitt and as an invitee she assumed all the normal and ordinary risks attendant upon the use of the stairway. Mrs. Hazlitt was not an employee of the bank, wherefore the doctrine of assumed risk has no application. West Texas U. Co. v. Renner (Tex.Com.App.) 53 S. W.(2d) 451, 454; San Angelo, etc., Co. v. v. Baugh (Tex.Civ.App.) 270 S.W. 1101; Nesmith v. Magnolia Pet. Co. (Tex.Civ. App.) 82 S.W.(2d) 721.

■ If the doctrine had any application to the present· facts, it is not here in issue for it was not pleaded. The defense of assumed risk must be pleaded. International & G. N. Ry. Co. v. Harris, 95 Tex. 346, 67 S.W. 315; Southern Pacific Co. v. Hazelbusch (Tex.Civ.App.) 200 S.W. 268; Kansas City, M. & O. Ry. Co. v. Hall (Tex.Civ.App.) 152 S.W. 445; Panhandle & S. F. Ry. Co. v. Kornegay (Tex.Civ. App.) 206 S.W. 708.

Propositions 7 and 8 assert certain of the issues submitted are upon the weight of the evidence. This criticism of the charge is untenable.

The remaining proposition complains of argument of counsel for appellees.

■ Mr. H. C. Carter in the opening argument for appellants said: "As a matter of fact, they could call on the Court to appoint a committee to examine that lady. The Court has the power to allow it; but the plaintiff has the right to accept or reject; and the committee report back here to you what, if anything they found. The only doctor that wanted to see the case—and that was way back yonder nearly two years ago—saw her merely in a five minutes examination, and they were willing to stand on that testimony, instead of the testimony of the man who knew the case from the beginning and who is still treating her. They said, 'No, if we call for or permit his Honor to appoint an impartial committee and they examine that lady, they are going to find out there is something wrong with her— ' "

Upon exception being taken to this argument Mr. Carter withdrew the same and requested the court to instruct the jury not to consider same which the court did.

In the closing argument for plaintiffs, Mr. Randolph Carter said: "Gentlemen, if they did not know that this lady was incapacitated and had a permanent injury, a serious matter with her, just like she testified and Dr. Ogilvie testified, don't you know that they would never have let this thing go to trial without asking her to submit to an examination, and that by some of their physicians, somebody they might select, so as to disprove it? Don't you know if they thought she was falsifying and exaggerating, and that Dr. Ogilvie was testifying to things that were not so, that they would have disproved that very easily, —able counsel as they are, experienced in these matters—Mr. West and Mr. Hardy? They tell you they have been trying these cases for years. It is reasonable to conclude that they would not let this case go to trial without having evidence by doctors of their selection to examine that lady and come to tell you she was not incapacitated, she was all right, if that were true."

No exception to Mr. Randolph Carter's argument was taken by counsel for the bank at the time it was made. The bill also shows "it was in reply to argument which had been made by defendant's attorneys." It was also shown by the bills both arguments were made while plaintiffs' counsel were discussing the amount of damages.

The arguments complained of were not inflammatory. They were made in connec-

318

tion with the amount of damages and there is no complaint of excessiveness in the verdict. In this connection, see Northern Texas Traction Co. v. Smith (Tex.Civ. App.) 223 S.W. 1013. Mr. H. C. Carter withdrew his argument, and the court instructed the jury not to consider it. Mr. Randolph Carter's argument was not excepted to.

In Robbins v. Wynne (Tex.Com.App.) 44 S.W.(2d) 946, 949, Justice Critz said: "In this connection, we hold that the correct rule is that, if the argument be such, or is made under such circumstances that, if objection is made at the time counsel making the argument can offer explanation therefor which will render such argument proper, or can make such amends as will render the same undoubtedly harmless, or, if the argument be of such a nature that its proper withdrawal by counsel or instructions by the court to the jury to disregard will cure the error, and render its harmful effect free from doubt, then the objections should be made at the time, and failure to do so waives the error."

We regard this ruling as applicable to the argument of Mr. Randolph Carter.

In the condition of the record we do not regard the arguments complained of as reversible.

Affirmed.