### ADAIR v. HOUSTON NAT. BANK.
### No. 11889.

Court of Civil Appeals of Texas. Galveston.
June 12, 1947.

Rehearing Denied July 10, 1947.

Fred Parks, of Houston, for appellant.

Fulbright, Crooker, Freeman & Bates, M. S. McCorquodale, and Sam W. Cruse, all of Houston, for appellee.

CODY, Justice.

This is an action by plaintiff to recover damage sustained by his wife on February 24, 1943, when she slipped and fell on a stairway in defendant's banking house leading down to the basement where the safe deposit boxes are located. At the conclusion of plaintiff's evidence, in response to defendant's motion, the court instructed a verdict for defendant. Plaintiff predicates his appeal on these two points:

1. The court erred in not admitting in evidence Section 1165, Art. 10, Revised Code of the City of Houston, regulating the construction of stairs in a building to be used as an "office building, store, factory, hotel, lodging house or school", on the ground that said ordinance did not apply to defendant's banking house.

2. The court erred in instructing a verdict for defendant.

We overrule plaintiff's first point. The building in question was constructed in 1927 by defendant to be used as its banking house. The plans and specifications

784

were by an architect, acting as an independent contractor, and the construction was also done by an independent contractor. The building has three floors and a basement. A rotunda reaches from the ground or street-level floor to the dome, and the second and third floors may be aptly described as balconies or galleries, as they are so constructed as to make the dome visible from the ground floor. Only a portion of the first balcony is occupied by bank employees,—those who form the auditor's department, and the portion they occupy is encased by glass partitions which reach but half way from the floor to the ceiling. On the second balcony is located the director's room which is quite large; and a private office for the use of the bank president is also located there. There is also an office for the president on the ground floor which is constructed so as to make him visible while therein from all parts of the ground floor.

It was established by stipulation that during the process of construction the banking house was inspected by city building inspectors, and that the construction was done under a building permit issued by the city, and upon completion of the construction, it was approved by the city building inspectors.

Section 1102—a section which appears in the building code—provides that no building "shall hereafter be constructed in the City of Houston except in conformity with the provisions of this Code." Section 1165 also appears in the building code, which contains many sections which prescribe many building regulations in addition to those contained in Section 1165. The approval of the banking house as constructed in conformity with the building regulations of the city by the city building inspectors, charged with the administration of said regulations, was a determination by them that Section 1165 was not applicable. If such construction by said executive officers is a reasonable one, it ought to be followed by the courts.

■ Defendant's banking house was clearly not a building to be used as "an office building, store, factory, lodging house or school," in the ordinary sense of those words. Most buildings used for commercial purposes contain one or more offices. But in common parlance no one would refer to a railroad station, warehouse, or a livery stable as an office building, merely because they contained an office. Even churches and private residences sometimes contain an office. Without further elaboration we hold that the construction of Section 1165 by the city inspectors as not being applicable to the construction of defendant's banking house was a reasonable one, and the court did not err in refusing to admit same in evidence over defendant's objection.

We consider that plaintiff's second point, presenting that the instructed verdict for defendant was error, raises a close question, but have concluded the point must be sustained, and the cause remanded for a new trial.

■ It is well settled that the owner of premises is not an insurer of the safety of an invitee, and that the liability of the owner of premises upon which an invitee is injured is based on the owner's superior knowledge of the dangerous condition. The rule of liability, in the abstract, is not different whether the invitee is injured while a guest in a private home, or when he is a customer in a commercial establishment. Of course the owner of a commercial establishment extends an invitation to the public indiscriminately to patronize his establishment, and the public includes the lame, the halt, and the blind, so, in practical application, the owner, as a person of reasonable prudence, may be under the duty to make his premises as safe, as his invitation is indiscriminate. However, there is no contention here that plaintiff's wife was lame, halt or blind, when she became an invitee. But the evidence did show that her hand was too small to grasp the marble balustrade or railing, which railing was more than six inches wide.

By his pleadings the plaintiff presented issues of actionable negligence, among others these: (1) Failure of defendant to equip the stairway with railings on either side. (2) Failure to illuminate the stairway properly. (3) Failure to have the stairs equipped with carpets or mats to

insure good footing. (4) The maintenance of the stairs in a slick and worn condition.

Plaintiff's evidence showed that the accident occurred shortly after 9:00 A. M. on February 24, 1943, which would be shortly after 8:00 A. M. Standard Time. The day was cloudy and from the evidence the jury could have concluded that the stairs were dimly lighted. The stairs were of smooth marble, and were without safety treads, or corrugation, or mats. It was stipulated that the stairs had not been changed or repaired since they were constructed, which was in 1927.

Plaintiff's wife, who was a mature business woman, and who had been a customer of the bank for years, testified that she decided to go to the basement to check her statements, and walked over to the stairway which led there from the ground floor, and placed her hand on the right balustrade, and started descending the stairs. She further testified that after she had descended a way, " * * * I felt my left foot slipping and that when I realized that I was in danger and I tried to grasp hold of this balustrade and I couldn't. I couldn't hold it, because you just can't hold it; that is all; and that is the last I remember until late afternoon. * * *" These questions were put to her which she answered as indicated:

"Q. What was the condition of those stairs on that morning, that is, February 24, 1943, as to whether they were slick? A. Well, I didn't notice them being slick until I was falling and then I realized the danger I was in. * * *

"Q. Mrs. Adair, did you or did you not appreciate and anticipate or know that those stairs were slick on the morning of February 24, 1943, at any time prior to the time you fell? (At this point an objection that the question was leading was overruled, and plaintiff's wife then answered.) A. Well, I didn't realize that the steps were slick until I was falling, and I tried to grasp this balustrade and that is all. I just don't remember anything else."

Plaintiff's evidence further showed that his wife had last used the stairs some four to six months prior to the accident. Thus,

the direct evidence was that the stairs were slick. And "slick" is defined by Webster's College Dictionary as "sleeked over with oil, or the like." The direct evidence also was that this condition was unknown to plaintiff's wife until she fell. We are unable to distinguish this case, upon the controlling facts, from Alamo National Bank of San Antonio v. Hazlitt et ux., Tex.Civ. App., 92 S.W.2d 315, 316, writ dismissed.

In the cited case, the appellee's wife was an invitee of the San Antonio bank, and slipped and fell on marble stairs which led to the basement. From an adverse judgment the bank appealed, and urged the insufficiency of the pleadings and evidence to show actionable negligence. The evidence, it was urged, showed that the stairway was constructed to a design and from materials customarily used for such purposes, and ordinarily found to be safe, and that no structural defect was shown, and no foreign substance was shown to have been on the stairs. Said the court:

"The soundness of this proposition in the abstract may be conceded, but by a number of witnesses it was shown the steps had become polished, slick, and very slippery." The court further stated that the evidence showed a cleansing compound was used on the steps *which tended to increase* the slippery condition, and, quoting, "This evidence shows the step had been permitted to become and remain unsafe and raised an issue of negligence upon appellant's part."

The defendant seeks to distinguish this case from the cited case on the ground that the presence of a foreign substance was shown to have been placed on the stairs in the form of a cleansing compound, which tended to make the stairs slick, whereas there is no such evidence here. Since the cleansing agent was placed on the stairs this would indeed bring home to the bank imputed knowledge that its agents had given the stairs a treatment which tended to make them slick, and thus establish knowledge of the slick condition. But it nowhere appears in the opinion that the slickness of the stairs resulted solely from the cleansing agent. The controlling evidence in that case, that which raised

786

the issue of actionable negligence, was that the steps had been permitted to become and remain unsafe. It was immaterial how the dangerous condition was brought about, whether by the use of a floor dressing or the wearing and polishing effect of shoes passing thereover for many years. Here, the direct evidence showed the stairs were in fact slick at the time of the accident, and we think that it could have been inferred the defendant in the exercise of reasonable prudence should have known of this condition of its stairs, and that it was actionable negligence not to have repaired such condition, or provided safety against such slickness.

We believe that plaintiff's direct evidence which we have herein adduced, which must be taken as true, together with the inferences most favorable to plaintiff which can be legitimately drawn therefrom, made a case to go to the jury on actionable negligence. The case is remanded for a new trial.

Reversed and remanded.

## On Motion for Rehearing.

One of the stipulations under which the case was tried was to the effect that the steps were in the same condition when the fall occurred as they were when their construction was completed in 1927. But Mrs. Adair testified that they were slick when she slipped and fell. Whether Mrs. Adair knew if the steps were slick goes to the weight of the testimony. In passing on a defendant's demurrer to a plaintiff's evidence, the evidence that is favorable to the plaintiff must be taken as true, and every legitimate inference favorable to plaintiff that can be drawn therefrom must be indulged, and all evidence and inferences unfavorable to plaintiff must be discarded. So, under the rule, the steps must be taken to have been slick, and it would be a legitimate inference that the maintenance of the steps in a slick condition was a proximate cause of Mrs. Adair's fall, unless it can be said that the evidence established, as a matter of law, that Mrs. Adair was guilty of contributory negligence which proximately caused the fall.

"Negligence, whether of the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Quoted from Lee v. International & G. N. R. Co., 89 Tex. 583, 36 S.W. 63, in Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 61, 143 S.W. 1150, 1152. In order to hold that Mrs. Adair was conclusively shown to have been guilty of contributory negligence, the evidence must have established as a matter of law that she did not exercise ordinary care for her safety in descending the stairs. Defendant contends that the condition of the stairs, whether slick or not, was open to her observation. But whether a slick condition of steps protrudes, so to speak, so as to challenge the attention of one keeping a proper lookout is a matter for the jury to pass on. We cannot hold as a matter of law under the evidence that Mrs. Adair was shown to have been guilty of contributory negligence.

The definition of the word "slick" adopted in the original opinion is not reasonably open to the construction that it implied some foreign substance was shown by the evidence to have caused the slick condition.

Appellee's motion for rehearing is refused.