Bell v. State, 135 Tex.Cr.R. 651, 122 S.W. 2d 630; Munoz v. State, 132 Tex.Cr.R. 218, 104 S.W.2d 25, and authorities therein cited.

Because the evidence is insufficient to support the conviction, the judgment is reversed and the cause remanded.

Opinion approved by the Court.

### MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. ROBERTS.

### No. 14125.

Court of Civil Appeals of Texas. Dallas.

Oct. 21, 1949.

Rehearing Denied Nov. 18, 1949.

G. H. Penland and Burford, Ryburn, Hincks & Ford, Dallas, and Freels & Elliott, Sherman, for appellant.

Webb & Rogers, Sherman, for appellee.

BOND, Chief Justice.

This is a suit brought under the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51 et seq., by Ollie B. Roberts against Railway Express Agency, Inc. and Missouri-Kansas-Texas Railroad Company of Texas for personal injuries sustained in the course of his employment. There was no liability fixed on the Railway Express Agency, Inc., and in the judgment of the trial court plaintiff took nothing as to that defendant. Therefore the Railway Express Agency, Inc., will not be further mentioned. The Missouri-Kansas-Texas Railroad Company of Texas will be hereinafter designated as defendant.

On January 2, 1948, Ollie B. Roberts, hereinafter called plaintiff, was employed by the Missouri-Kansas-Texas Railroad Company as a joint express messenger; his duties were to deliver express parcels, baggage, and mail from a particular train on which he worked. On the occasion in question, plaintiff was working on the defendant's train running between Denison and Fort Worth, Texas; had boarded the train in Fort Worth. Among the parcels of express, mail, and baggage in the car, there were certain bundles of newspapers in mail pouches or sacks weighing approximately 40 or 50 pounds which he was required to sort out from among other parcels of baggage and mail destined for other stations in and out of Texas, and place them at or near the car door to be put off at intervening stations. The train did not stop at Aubrey, a station between Fort Worth and Denison. In such nonstop station it was plaintiff's duty to throw the mail sacks with the newspapers from the moving train so as to hit the station platform. In performance of these duties, plaintiff opened the sliding side door of the car, first about two feet, looked out to gauge the distance and to avoid striking standby newsboys who might be on the platform awaiting the papers for distribution. He then opens the door wider, throws the pouch of newspapers destined for that point from the moving train. On the occasion here, plaintiff looked out the door, just before throwing the newspapers, when something hit him in the face, in both eyes; he did not see the object and did not know what hit him or from whence it came, other than that it was some object blown in by the movement of the train. The only record testimony explanatory of the object that struck plaintiff is revealed by his own narrative of the occurrence,— that "I went to the door to throw this sack of mail, and first I looked out, naturally, and when I looked out a bunch of this sand or gravel, I don't know what, hit me in the face in both eyes"; that thereafter

200

an infection arose in his right eye, ultimately resulting in the loss of a substantial portion of its vision.

The record evidence further discloses that the method used by plaintiff and other railroad employees working in similar baggage cars was the same routine universally adopted in the handling of baggage and mail from such cars. No other method is shown to have existed. The employees were required to work from the large open door, six or eight feet wide, which opened by sliding forward in the front end of the baggage car; and, upon approaching a station where the mail was to be delivered, to slide the door forward approximately two feet and, while holding to the sill of the door with his left hand and to the door with his right hand, look out .and sight down the road towards the platform so as to time the throw and ascertain clearance,—that no one might be hit by the mail pouches. Such employee would then open the door wider, grab the sack of mail, and, at the proper time, throw it out the door so it would land safely within the area designated for it to fall. The dooropening had no available bars or rails to prevent employees from falling out of the door and the door-opening was not equipped with cinder shields. Such routine was employed by the plaintiff on the occasion in question in dispatching the mail bags, and such methods were universally employed by all railroads and their employees in combination baggage and mail cars. None of such cars were equipped with cinder shields or protective bars across the doors.

In contrast to the methods and routine of work employed in combination baggage and mail cars as above related, is that employed in Railroad Post Office (RPO) cars specially designed for handling mail only,—no baggage. Such RPO cars are constructed with narrow doors, 3½ feet wide, across which is a safety bar, and, in front, on the outside, are attached cinder shields of glass, approximately 12 or 14 inches square, located about the height of a man's head. Upon approaching a nonstop station, the employee looks out the door to time his dispatch of the mail pouches and to catch such mail pouches as may be hanging to mail cranes near the track by a contrived lever-arm attached to the car. It will thus be seen that the only difference between the methods of handling ordinary mail pouches in RPO cars and in combination baggage and mail cars, is that no baggage car has cinder shields or bar protector,—whilst RPO cars are so equipped. It is uncontroverted that cinder shields and protector rods are universally placed on RPO cars for the mail clerk to sight through in order to operate the crane device and pick up mail pouches from hangers. Such is a precise operation, requiring the catcher or lever bar to be held at the exact level of the middle of the hanging pouch; and such devices are never attached to a combination baggage and mail car. Both baggage cars and RPO cars are of standard construction, equipped in accordance with the universal custom and practice of railroads operating in the United States, and are specially designed for the purposes of their particular usage.

Plaintiff's petition upon which he went to trial alleged several acts of negligence; attempting, however, only to support by proof the failure of defendant Missouri-Kansas-Texas Railroad Company to have the baggage car in question equipped with a cinder shield in the manner as provided for RPO cars, and sought recovery against the railroad company only, because of such failure. In a belated trial amendment, plaintiff alleged additional acts of negligence, pertinent here: That the plaintiff at the time and on the occasion of his injuries, "was doing and performing his work by and in accordance with the methods adopted by the Missouri-Kansas-Texas Railroad Company of Texas for the conduct of its business; that in adopting such method for the conduct of its business the defendant' Missouri-Kansas-Texas Railroad Company of Texas was guilty of negligence," and such negligence was a proximate cause of plaintiff's injuries and damage. The defendant timely urged exceptions to the filing of the belated trial amendment and to the submission of the issues of negligence and proximate cause by reason of the alleged "methods adopted by the defendant in the conduct of its business," as being too general, pointing

out no particular act of omission or commission with any degree of definiteness or particularity, so as to enable defendant to adequately prepare its defense and prepare or submit issues in contravention of such alleged negligence; also, that same are vague, bringing into review the entire gamut of the company's operations from the location of its terminals, its construction of tracks, the promotion of schedule and speed of its trains, the employment and training of its operators, the general management of its business, and other business routine making up the methods and conduct of its business,—all of which necessarily come within the scope and breadth of such pleading. And, further, that such allegations are wholly immaterial and irrelevant to any issue in the case, for the reason it affirmatively and conclusively appears from the record that the operation of its train and the construction and design of the baggage car in question are standard and conform to the uniform practices, uses, and customs of railroad companies.

The court overruled defendant's exceptions, and, the cause being tried to a jury, submitted issues in conformity with plaintiff's pleadings. In consequence, the jury found that the defendant was not guilty in failing to equip the baggage car in question with a cinder shield; that the defendant was guilty of negligence in the "methods adopted for the conduct of its business"; and, to the ancillary issues, that such negligence was proximate cause of plaintiff's injuries. On the issues submitted at the instance of defendant, the jury also found that plaintiff was guilty of negligence in failing to wear goggles, which was a proximate cause of his injuries. The verdict of damages was for the sum of $13,371.71 which should be diminished in the sum of $4,457.23 by reason of plaintiff's negligence in failing to wear goggles. On the basis of the verdict, the trial court, against defendants motion for judgment on the findings of the jury and judgment non obstante veredicto, entered judgment in favor of plaintiff for the sum of $8,914.48.

It will be seen in plaintiff's petition that he alleged several specific acts of negligence, which are component parts of defendant's method of doing business. These allegations, in brief, charged negligence (1) in operating its train at a high and excessive rate of speed; (2) in failing to cause the train to be stopped; (3) in causing the train to be accelerated in speed; (4) in causing the track to be sanded; (5) in failing to furnish plaintiff with a cinder shield; (6) in failing to equip the railroad baggage car with a cinder shield. Then, in the belated trial amendment, plaintiff repeated and adopted in seriatim the aforesaid special issues and, in addition, the general allegation of negligence as to the "methods" adopted by defendant in the conduct of its business. No attack has been made on the failure of the trial court to submit any of the aforesaid special acts of negligence, and none was requested to be submitted, other than failure to equip the baggage car with a cinder shield. The jury found that such failure was not negligence; and the special acts alleged, not submitted, necessarily enter into the scope of review on the general charge as to the "methods" employed by the defendant in the conduct of its business. There is no evidence in the record independent of such specific acts that remotely caused the mote in plaintiff's eye, and there is no methodical act of omission or commission alleged or proven, as affects the conduct of defendant's business, other than the lack of a cinder shield and the failure to wear goggles, that suggests negligence in the "methods" employed by defendant. Applying the most liberal rule of construction, the underlying factual premise cannot be definitely and certainly found, even by inference or implication, that the methods employed by the defendant in the operation of its business were a proximate cause of plaintiff's injuries.

■ In Baugh v. McClesky, 292 S.W. 950, Judge Hickman, for the Eastland Court of Civil Appeals, condemned a similar charge of general indefinite speculation; and, too, in Robert Oil Corp. v. Garrett, Tex.Civ.App., 22 S.W.2d 508, affirmed Tex.Com.App., 37 S.W.2d 135, a like condemnation of a charge in permitting employees, or either of them, to use, drive,

and operate the defendant's automobile; and in Harbin v. City of Beaumont, Tex. Civ.App., 146 S.W.2d 297, in failing to provide a safe and secure place in which plaintiff could perform the work required of him by the City of Beaumont. Authorities are numerous condemning charges and submission of issues general in nature portraying the whole of plaintiff's pleadings; thus concealing under a mass of generalities the facts relied upon for recovery.

■ Appellee submits the case of Railway Express Agency v. Bannister, 46 S.W.2d 372, opinion by the Austin Court of Civil Appeals, in support of his contention that the charge and issues of defendants were correctly submitted as to defendant's negligence in the methods adopted for the transaction of its business. It will be seen that the charge and issue submitted in that case were not challenged as in the instant case; hence it cannot be said that the case is an apt authority for submission of such issues. We are of the opinion that the trial court was led into error in overruling the defendant's exceptions to the allegations and submission of the issues, generally, as to the methods adopted by defendant in the conduct of its business, and, having submitted the issues over the objections, the court erred in overruling defendant's motion for judgment notwithstanding the jury's affirmative findings.

In view of what we have said, the judgment of the court below is reversed, and, the cause having been fully developed, we see no useful purpose in remanding the cause to the court below for another trial on uncontroverted facts. Therefore judgment is here rendered for the defendant.

### On Motion for Rehearing.

Appellee's motion for rehearing, other than assigning error in our sustaining appellant's points of error, thus reversing judgment of the trial court and rendering judgment for appellant, calls attention to our failure to consider his several points of error relating to the action of the court below in submitting issues of nondelegable duty of the employer in reference to its employee's (appellee's) failure to wear goggles as contributory negligence; and, on findings of the jury, diminishing the $13,371.71 in the sum of $4,457.23, or to the sum of $8,914.48 and entering judgment accordingly.

■ There are certain duties that an employer owes to an employee that are nondelegable. Among these nondelegable duties is the duty to see that suitable instrumentalities are provided and to see that they are safely used. See 29 Tex.Jur., p. 152, sec. 84; Fort Worth Elevators Co. v. Russell et al., 123 Tex. 128, 70 S.W.2d 397; City of Beaumont v. Silas, Tex.Civ. App., 200 S.W.2d 690, error refused w.o.m.; City of Austin v. Johnson et al., Tex. Civ.App., 195 S.W.2d 222, 231, ref. w.o.m. The record evidence shows that appellee on the occasion of his injury was not wearing goggles, that he had none in his possession and none were available if he thought it necessary to wear them. He had never worn goggles and had never heard of an express-man wearing them; and there is no evidence that his employer had ever furnished goggles for use of its employees. We think the evidence is insufficient to support the issue of contributory negligence as found by the jury; hence if we be in error in our original opinion reversing and rendering judgment in favor of appellant, then appellee would be entitled to a judgment for the full amount of $13,371.71 instead of the reduced amount of $8,914.48.

Appellee's motion for rehearing is overruled.