J. W. LUVUAL et ux., Appellants,

v.

HENKE & PILLOT, DIVISION OF the KROGER COMPANY, et al., Appellees.

No. 13924.

Court of Civil Appeals of Texas.

Houston.

Jan. 31, 1963.

Rehearing Denied March 28, 1963.

Second Rehearing Denied April 18, 1963.

Carl Waldman, Ernest L. Sample, Beaumont, for appellants.

Keith, Mehaffy, McNicholas & Weber, Beaumont, James W. Mehaffy, Dewey J. Gonsoulin, Beaumont, of counsel, for appellee.

BELL, Chief Justice.

Appellant, J. W. Luvual, sued appellee to recover damages that resulted from injuries received by his wife, Ann, when an automobile in which she was riding was in collision with a truck belonging to Henke & Pillot which was being driven by Kinsey Whitfield, an agent of Henke & Pillot. Trial was to a jury and based on the jury verdict the court rendered judgment that plaintiff take nothing.

Appellant's theory of recovery against Henke & Pillot was that Kinsey Whitfield as its agent, acting in the course and scope of his employment, was negligent and his negligence was a proximate cause of the collision. Another theory of recovery was that Henke & Pillot was negligent in entrusting its truck to Whitfield who was an incompetent driver, which fact was known to it or could have been known in the exercise of reasonable diligence. This latter theory was not submitted to the jury because Henke & Pillot had judicially admitted that Whitfield at the time of the accident was its employee and was acting in the course and scope of his employment.

The court in its main charge before the submission of the special issues defined certain legal terms, two of which we will

notice. He defined the term "proper control" as meaning "that control exercised by a person of ordinary prudence, in the exercise of ordinary care, under the same or similar circumstances." He defined "excessive speed" as "a greater rate of speed than that at which a person of ordinary prudence in the exercise of ordinary care would have operated a vehicle under the same or similar circumstances." "Ordinary" and "negligence" were defined in the usual manner. The court then submitted special issues inquiring as to alleged acts of negligence on the part of Whitfield. There was no contention that any contributory negligence existed. We need notice only the following issues and the jury's answers to them:

Special Issue No. 3 inquired as to whether Whitfield, as he approached the intersection in question and immediately prior to the collision, was driving his truck at an "excessive rate of speed." The jury answered, "We do."

Special Issue No. 4 inquired if the jury found his driving at an excessive rate of speed was negligence. The jury answered, "We do not." Special Issue No. 5 was predicated on a "We do" answer to Special Issue No. 3 and inquired if such negligence was a proximate cause of the collision. The jury answered, "We do not." Special Issue No. 6 inquired whether immediately prior to the collision Whitfield failed to keep the truck under "proper control." The jury answered, "We do." Special Issue No. 7 asked whether such failure was negligence and the jury answered "We do not." Special Issue No. 8 was predicated on a "We do" answer to Special Issue No. 6 and inquired as to whether the jury found the failure to keep the truck under proper control was a proximate cause of the collision and the jury answered "We do not." Special Issue No. 9 inquired as to whether the jury found Whitfield, immediately before the collision, was driving in excess of 30 miles per hour. The jury answered "We do." By its answer to Special Issue No. 10 the jury found such was negligence, but in answer to Special Issue No. 11 found such was not a proximate cause of the collision. In answer to Special Issue No. 15 the jury found the collision was the result of an unavoidable accident.

Appellant here takes the position that the jury found the defendant Whitfield guilty of negligence in driving at an excessive rate of speed, in driving at a speed in excess of 30 miles per hour, and in failing to keep the truck under proper control, and that while the jury found that none of these acts was a proximate cause of the collision, each act was, as a matter of law, a proximate cause of the collision. He also takes the position that unavoidable accident was not raised by the evidence.

The collision in question occurred July 2, 1960, in Chambers County, at the intersection of State Highways 124 and 73. At this point Highway 73 runs in a southwesterly direction. Highway 124 runs in approximately an east-west direction at this point. At that time Highway 73 ran from Pt. Arthur west and ended at Highway 124. The truck owned by Henke & Pillot and driven by its employee Whitfield was coming from Pt. Arthur to Houston. When Whitfield reached the intersection it would be necessary for him to turn left on Highway 124 to proceed to Houston. Actually Highway 73 runs approximately southwest but about 100 feet before it intersects Highway 124 it curves toward the north, so that the intersection with Highway 124 is almost at a right angle. At the intersection there is a stop sign controlling traffic on Highway 73 as it comes into Highway 124. Approximately 300 feet easterly from the intersection there is on Highway 73 a slightly raised 4 foot wide concrete median that runs to a point about 60 feet from the intersection. At a point about 80 feet from its southwesterly terminus the esplanade or median begins to curve to the right as one is coming from Pt. Arthur as was Whitfield.

We need not detail the various warning signs and speed signs. It suffices to say that Whitfield was well acquainted with the signs and the intersection. Also the collision occurred about 11 o'clock in the morning and under the testimony Whitfield was exceeding the 30 mile speed limit.

There were no witnesses to the accident who could relate material facts concerning what led up to the collision, other than Whitfield. A highway patrolman who investigated the accident gave evidence of what he found on the ground, but his testimony sheds little light on the problem before us, except as we shall hereafter notice.

Whitfield testified he was proceeding from Pt. Arthur to Houston. He had a rash on his right foot that he referred to as "Pacific Rot" because he got it while serving with the armed forces in the Pacific Theatre of operations. Because of this he had cut the top part of the shoe from the lower part of the place where the shoe laces begin so that below that point his foot was exposed and there was only the sole of the shoe remaining below the laces. About 200 feet before he got to the stop sign he was driving at 35 or 36 miles per hour. He had been going about 45 miles an hour but had slowed down. At the 200 foot point he thought the truck would not reach the intersection so he placed his foot lightly on the accelerator to "goose" the speed up. He said he barely increased the speed. At a point about 150 feet from the stop sign he attempted to lift his foot from the accelerator and found it was caught on the sole of his shoe. He had been using this shoe in this condition for some time and had had no trouble with it. As he attempted to "snatch" it loose, the truck hit the esplanade and he lost control of the truck. The truck jumped the esplanade and went over to the left side of the Highway 73 and on across Highway 124. The truck jumped the esplanade about 3 or 4 feet from the end of it and 20 or 25 feet from

the stop sign. He kept trying to get control of his truck because he was on the wrong side of the road and he knew he might have a head-on collision. He was unable to get control. He knew about the stop sign. He was going to turn left on Highway 124 to go to Houston. He could not make the turn at 30 miles per hour without turning over. At the speed he was going, had he not lost control of the truck, he could have stopped at the stop sign. There is no evidence he could not have done so. The tachometer showed the speed to have been 45 miles per hour at a time before the accident, but Whitfield testified he had complained to his employers that it was working incorrectly. Too, Officer Manning said he could not say what the last reading on the tachometer was immediately before the accident, because he didn't remember. He looked at it at the scene of the accident. Whitfield said someone told him it showed 45 miles per hour. A copy of the tachometer in evidence shows 45 miles per hour and then an abrupt drop to zero. Mr. Manning, the investigating officer, testified the fact that the tachometer showed 45 miles per hour and then an abrupt drop to zero would not, because of the short time interval, necessarily mean the driver was not slowing to 30 miles per hour as he testified.

As the truck went across Highway 124 it was hit by the automobile occupied by Mrs. Luvual.

Appellant filed his motion asking the court to render judgment notwithstanding the verdict. The position taken was that the jury's finding that Whitfield's negligence in driving at an excessive rate of speed, at a speed in excess of 30 miles per hour, and in failing to keep the truck under proper control, were not a proximate cause of the collision, had no support in the evidence, but to the contrary, as a matter of law, each was a proximate cause. Too, he contended there was no evidence to support the finding of unavoidable accident and the issue should not have been submitted. Also, on motion

for new trial, the position taken was that such answers were contrary to the overwhelming weight and preponderance of the evidence.

■■ In determining whether the trial court should disregard the jury's answers to certain issues and then render judgment in favor of the movant, it must appear there is no evidence of probative value supporting the jury's answers. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194. We must view the evidence most favorable to the party against whom such judgment is sought. Texas Employers Ins. Ass'n v. Smith, Tex. Civ.App., 235 S.W.2d 234, C.C.A., writ ref.; Martin v. Texas & N. O. R. Co., Tex.Civ. App., 267 S.W.2d 581, C.C.A., n. r. e.

■ While there may be cases in which a court would be warranted in holding an act of negligence to be a proximate cause of an injury, such cases are extremely rare and generally the question of proximate cause is one of fact. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063.

■ We have reached the conclusion that there was evidence of probative force supporting the jury's answers that the negligent acts of Whitfield were not the proximate cause of the collision but that the collision was the result of an unavoidable accident.

To be the proximate cause of an event, there must be both causation in fact and foreseeability. Baumler v. Hazelwood, Tex., 347 S.W.2d 560; City of Austin v. Salazar, Tex.Civ.App., 241 S.W.2d 445, C. C.A., ref., n. r. e.

Here, under the facts above recited, the jury could well have reasoned that though Whitfield was driving in excess of 30 miles per hour, which was excessive under the circumstances, and that this also constituted a want of proper control, that he could not reasonably foresee that any accident would occur because he would be able to stop his truck before entering the intersection. He was some 150 feet away from the intersection. Whitfield, who was certainly very familiar with his truck, its condition and the condition of the brakes, testified he could have stopped. This is some evidence the jury could in reason believe. There is no contrary evidence. Too, the highway patrolman testified to facts showing good braking power.

Too, the jury could well reason that there was no causation in fact but that the only reason for the collision was that Whitfield's shoe hung on the accelerator as he testified, and that while attempting to get his foot loose his truck hit the esplanade, causing him to lose control of the truck. Such would not, however, necessarily constitute a failure to maintain proper control under the circumstances. Too, the jury could well have reasoned that under such circumstances the accident would have happened even though Whitfield's speed had been 30 miles per hour or less because on losing control when his foot caught under the accelerator he was unable to get it loose and could not use his brakes but could only do as he said he tried to do, that is, regain control and return to the correct side of the road to avoid possible collision with any oncoming vehicle. Certainly we cannot say as a matter of law there was either the necessary causation or foreseeability.

■ The facts above recited and discussed show that an issue of unavoidable accident was raised. Unavoidable accident is raised if there is evidence that the accident resulted from something other than some act of negligence of the parties. Here one could reasonably conclude that the only thing that caused the collision was the loss of control of the truck because of Whitfield's foot or shoe becoming hung on the accelerator. Too, it could certainly be viewed that his driving with the shoe in that condition was not negligent, particularly when he had been driving with that shoe in the described condition for some time and had had no trouble. It is interesting to note that it was not even alleged in appellant's petition that such was negligence. It is

true that this act of Whitfield's in getting his foot caught was his own act, but it could be viewed as the only cause of the accident and could be viewed as a non-negligent act. This would raise the issue of unavoidable accident. Wichita Transit Co. v. Sanders, Tex.Civ.App., 214 S.W.2d 810, C.C.A.

Appellant also contends the jury's answers to the proximate cause issues and the unavoidable accident issue are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong. In passing on this question we must consider and weigh all of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Applying such test to all of the evidence in the case, we are unable to say that such answers are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

What we have said with regard to proximate cause has been based on the assumption that the jury found a want of proper control and negligence in the speed at which the truck was operated. The parties have briefed the case on such assumption though we note appellant in his motion for new trial raised the question of conflict in the jury's answers that we will discuss. We assume he abandoned such because he realized such would not be helpful to him in the light of the jury's finding of an unavoidable accident.

■ The court in its charge defined excessive speed. When the jury answered Special Issue No. 3 that it found Whitfield drove his truck at an excessive rate of speed, in the light of the court's definition, there was a finding of negligence. Yet, in answer to Special Issue No. 4, the jury found that such excessive speed was not negligence. Too, in answer to Special Issue No. 9, the jury found the speed was in excess of 30 miles per hour and this was negligence. The findings are in conflict and each cancels the other. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985;

Kilgore v. Howe, Tex.Civ.App., 204 S.W. 2d 1005, C.C.A., no writ hist.; Interstate Trust & Banking Co. v. West Texas Utilities, Tex.Civ.App., 88 S.W.2d 1110, C.C.A., no writ hist.

■ The same is true with regard to proper control. The term was defined in the court's charge. In answer to Special Issue No. 6, the jury found Whitfield failed to keep his truck under proper control, but in answer to Special Issue No. 7, it found such was not negligence.

These conflicting answers cancel each other and leave appellant without any finding of negligence. This leaves standing the finding of unavoidable accident.

■ Appellant complains that the trial court erred in depriving him of his ground of recovery based on his allegation that Henke & Pillot was negligent in entrusting the truck to Whitfield who it knew, or, in the exercise of reasonable diligence, could have known, to be an incompetent driver.

Before commencement of the trial, Henke & Pillot judicially admitted, through stipulation, that Whitfield at the time in question was its agent and was acting in the course and scope of his employment. Appellee moved the court not to allow any evidence on alleged incompetency of Whitfield. No evidence was allowed and there was no submission of this theory of recovery. This theory was based on the allegations of five previous automobile collisions and two traffic tickets for speeding.

We are unable to find in the record any showing by way of any type of bill of exception that the allegations, or any of them, are true. We find no evidence at all offered on these allegations. While appellant very properly would not go contrary to the court's ruling and offer proof to a jury, he should show in the record what evidence he could rely on to establish the allegations. Without the benefit of such, we are not in a position to appraise the complaint of reversible error.

The only theory under which the previous acts of alleged negligence would be admissible would be to show negligence on the part of the owner of the vehicle in entrusting an incompetent driver with the vehicle, so as to make an owner liable even though the driver was not his agent or was not acting in the course or scope of his employment. When agency and course and scope of employment were admitted, previous conduct became immaterial in this case. Patterson v. East Texas Motor Freight Lines, Tex.Civ.App., 349 S.W.2d 634, C.C.A., ref., n. r. e. Even if Henke & Pillot should be shown to be negligent in entrusting this truck to Whitfield, there would be no liability unless appellant showed further that Whitfield was guilty of a negligent act that was a proximate cause of the accident. There is no such finding here. Seinsheimer et al. v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; Mundy et al. v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587; Spratling et al. v. Butler et al., 150 Tex. 369, 240 S.W.2d 1016.

Finally, appellant complains that the trial court erred in not allowing him to prove by Mr. Manning, the investigating officer, that while he was investigating the accident, Whitfield first told him that the air went out on his truck and the brakes failed. The officer tested the brakes and found 65 or 70 pounds of air pressure. Mr. Manning was the first witness called by appellant. He testified that when he arrived at the scene of the accident there were numerous vehicles there. The only person involved in the wreck who was present when he arrived was Whitfield. He didn't know how long after the wreck he arrived. He was 4 or 5 minutes away. He didn't know how long it took someone to notify him. When an objection was made to the offer in evidence of what Whitfield told Mr. Manning, the court stated, "At this time I sustain the objection in line with our understanding that we had up here at the bench." The bill of exception was then made. It reflects that Mr. Manning said he couldn't say how long it was after the accident before he arrived,

but it was less than 10 minutes after he was notified. The other people figuring in the wreck were on their way to the hospital. About 3 minutes after he got there he had his conversation in which Whitfield first told him the air went out on the truck. Manning tested the brake and went back and asked Whitfield why he told him the air went out. Then Whitfield told him his foot got hung.

Mr. Ed Berberich, who was driving the automobile, and who was a plaintiff, testified an ambulance arrived about 15 minutes after the accident. He said an officer (he didn't know who) got there about the same time as the ambulance.

After Mr. Manning testified he was excused on motion of appellant, but it was agreed to by appellee.

When Whitfield testified, he denied, in response to appellant's question, that he first told the officer his brakes went out. When Whitfield made this denial, appellant asked to be allowed to impeach the witness by reading the testimony of Officer Manning given out of the hearing of the jury.

Appellee's objection to the offer of the statement of Whitfield was that it was not res gestae and would be hearsay.

Each case must be considered in the light of all facts. Other decided cases are of little help except as the principles of law are announced. Basically the test is whether under all of the facts the expressions may be said to be the words of the person uttering them instead of the event speaking through the person. A great deal of discretion is vested in the trial judge in passing on the admissibility of evidence. The burden is on the person offering testimony to show its admissibility.

Here it is not shown how long after the accident Whitfield made the statement. It is only shown that Mr. Manning got to the scene about 10 or 15 minutes after he was notified of the accident. When he got there, there were many other vehicles.

Everyone involved in the accident except Whitfield had left. There was some evidence that the ambulance which took them arrived about 15 minutes after the accident and that Mr. Manning had not arrived. When Mr. Manning arrived he did not immediately talk to Whitfield but spent about 3 minutes investigating. Whitfield had said nothing until Mr. Manning asked Whitfield to tell him how it happened. In response to the question Whitfield made the statement that was excluded from the evidence. The trial court could well have concluded the statement was but a narrative of what occurred and not the event speaking and therefore it was not admissible as res gestae.

■ To be admissible against Henke & Pillot as original evidence it would have to come within the res gestae rule. It would be admissible against Whitfield who was a party to the suit. The offer, however, was general and it was not asked to be admitted only as against Whitfield. Where evidence is inadmissible against one of the parties and admissible against the other, the party offering it must offer it against the party against whom it is admissible. If he does not do so, but offers it generally and the court sustains an objection, there is no error in exclusion. Berger v. Kirby et al., Tex.Civ.App., 135 S.W.1122, C.C.A., aff'd 105 Tex. 611, 133 S.W. 1130; McCormick and Ray, Texas Law of Evidence, 2nd Ed., Sec. 21, p. 20.

■ At the time Manning testified, Whitfield had not testified, so at this stage the evidence was not admissible for impeachment. After Whitfield testified and denied making the statement, appellant offered to read the testimony Manning had given in connection with perfecting appellant's bill of exception after the testimony had been excluded. Appellee had not cross-examined Manning on this phase of his testimony. It was not necessary because it was excluded. Appellant asked that Manning be excused after he had completed his testimony. He was excused by agreement. We cannot say the court under such circum-stances abused his discretion in excluding the evidence for impeachment purposes. Appellee would have been deprived of his right of cross-examination. The record does not reflect any effort by appellant to have Mr. Manning return and in person give the testimony.

The judgment of the trial court is affirmed.

## On Motion for Rehearing

■ Appellant insists that we were in error in holding that the trial court did not err in excluding the testimony of Officer Manning concerning what Whitfield told him. The testimony was offered for impeachment and as res gestae. We held we could not say the trial court abused his discretion in holding it not to be res gestae. It was, therefore, admissible as an admission only against the defendant Whitfield. It was offered generally and not just against Whitfield. Appellant insists that where testimony is admissible against one party and not others it is error to exclude the testimony and the burden is on the objecting party to ask the court for any limiting offer. The cases cited by appellant are all cases where the trial court *admitted* testimony and it was held that in such case the objecting party must ask for a limiting instruction. The reason is that it was admissible against some of the parties and the burden is not on the court to ferret out who it is not admissible against. However, if the court has *excluded* the testimony, the rule is the same, that is, the burden is not on the court to examine the general offer and determine who it is admissible against and who it is not admissible against. That burden is on the offeror to make the proper specific offer. In addition to the authorities previously cited, see Panhandle & S. F. Ry. Co. v. Cowan, Tex.Civ.App., 243 S.W. 912 (C.C. A.); Sullivan v. Fant, Tex.Civ.App., 160 S.W. 612 (C.C.A.); Magee v. Paul, Tex. Civ.App., 159 S.W. 325 (C.C.A.).

Appellant points out that we erroneously stated no effort was made to get Officer

Manning back to the stand after Whitfield had testified. He is correct to the extent that the statement of facts shows that appellant's counsel at trial stated to the court he rested subject to putting Officer Manning on the stand. Then there appears this statement by the court: "The court is calling right now for procedure of this trial. Call your next witness." The counsel then announced he rested. Nothing is shown of any effort to obtain the presence of Manning.

The motion for rehearing is overruled.