**J. C. PENNEY CO., Inc., Appellant,**

v.

**Cardell HOLMES and Savannah Holmes, Appellees.**

**No. 16320.**

Court of Civil Appeals of Texas.

Dallas.

March 20, 1964.

Rehearing Denied April 17, 1964.

Thompson, Knight, Wright & Simmons, Pinkney Grissom, Jerry P. Jones and John A. Gilliam, Dallas, for appellant.

Leachman, Gardere, Akin, Porter & De-Hay, Edward E. Crowell, Jr., and Ralph Hartman, Dallas, for appellees.

BATEMAN, Justice.

Cardell and Savannah Holmes, husband and wife, recovered a judgment based on a jury verdict against J. C. Penney Company, Inc., for $6,000 damages for personal injuries sustained by Savannah Holmes when she allegedly caught the heel of her shoe on a loose metal strip on one of the stairs in appellant's store in McKinney, Texas and fell to the bottom of the stairs.

*Facts*

The stairway in question, beginning at the ground floor, consisted of three steps and a "landing" (which was the fourth step), at which there was a 90-degree turn to the left and from which the steps continued to the second floor. The steps and landing were covered with linoleum, and on the outside or "leading" edge of each step was a metal strip. A person ascending these stairs would face a sign on the wall at the landing mentioned, reading:

> "SAFETY FIRST
> PLEASE USE HANDRAIL."

On each side of the steps below the landing is a bannister, on top of which is a wooden

handrail. Mrs. Holmes denied in her testimony the existence of such a handrail at the place where she started falling, but a photograph introduced in evidence clearly shows, and the jury found, that it was there. Mrs. Holmes had been in the store numerous times, and on the day of her accident she climbed the stairway in question and, after trying without success to find clothing which fit her, started to descend the same stairs. She had her purse suspended from her left arm and was not carrying any packages. She reached the landing safely and turned to her right to go down the remaining four steps. She stepped off with her right foot but the heel of her left shoe caught on something and she fell downstairs. She said she did not know what it was her left heel caught on but it was "something bright." She said that after she fell she saw her left shoe hanging on the metal strip on the stair. She said this shoe was brought to her out at the hospital and that the heel thereof had come partially loose from the shoe but was still attached. She said that she did not have anything in her right hand and that if there had been a rail there she could have caught hold of it, but she didn't catch hold of it because there wasn't any rail there. She said that when she went up the stairs she did not see anything wrong and she didn't feel anything loose under her feet.

However, there was evidence that in the latter part of 1960 (the accident occurred February 27, 1961) walking on the metal strips on the stairs produced "a rattling sound, a rather peculiar sound," that some of the metal strips were loose; and that about a month and a half or two months before Mrs. Holmes' accident another woman had caught her heel on the metal strip on one of the stairs four or five steps up from the landing, and that this metal strip was raised above the stair level.

S. E. Davidson, a part time contractor, testified that he had worked on the stairway in 1958 when he lowered the metal strips to make them level or flush with the linoleum on the stairs, and that the particular metal strips had been there "a long time"; that after hearing about Mrs. Holmes' fall he went back and found that there were no strips loose on the stairs. The store manager also testified that he went up and down the stairs several times a day and inspected the stairs at all times and found nothing wrong with them; that on the day of this accident he made a very careful examination of the staircase and found nothing wrong with it, and that since Mr. Davidson's work in 1958 the tread has always been flush with the step; that it would be impossible for anyone to have caught the edge of her heel under the metal strip; that the strips were all screwed down tight and that they were not loose.

Mrs. Jewell Hendricks, an employee of the store, testified that she saw Mrs. Holmes fall, and when asked to describe the fall she said, "Well, she just kinda wilted down and kinda grabbed for the stair rail." When she arrived at the place where Mrs. Holmes had fallen she did not see Mrs. Holmes' shoe stuck under the stair tread.

The jury's findings on special issues were: (1) the defendant failed to provide a safe place for Savannah Holmes to walk, (2) which was negligence, and (3) a proximate cause; (4) the defendant maintained a step at the top of the landing of the stairs in question with a loose metal strip thereon, (5) which was negligence, and (6) a proximate cause; (7) the defendant failed to exercise ordinary care in installing and maintaining the metal strip on the edge of the top step of the landing, (8) which was a proximate cause; (9) the event was not an unavoidable accident; (10) Savannah Holmes failed to heed the warning sign located on the wall at the landing of said stairs, (11) which was negligence, but (12) was not a proximate cause; (13) the defendant had provided handrails on the stairs for the use of persons descending them; (14) Mrs. Holmes failed to use the handrail, (15) which was negligence, but (16) was not a proximate cause; (17) Mrs. Holmes did not fail to keep a proper look-

out; (19) her damages for pain, mental anguish, etc., were $5,350, and (20) her medical bills incurred in the past amounted to $650.

## Opinion

By its first four points of error on appeal appellant contends that the court erred in overruling its motion for judgment *non obstante veredicto* because (1) as a matter of law the contributory negligence of Mrs. Holmes in failing to use the handrail was a proximate cause of her fall and injuries, and (2) the jury findings to the contrary were against the great weight and preponderance of the evidence.

"To be the proximate cause of an event, there must be both causation in fact and foreseeability." Luvual v. Henke & Pillot, Division of Kroger Co., Tex.Civ.App., 366 S.W.2d 831, 836, err. ref. n. r. e.

The burden rested on appellant to establish, not only negligence on the part of Mrs. Holmes, but also that such negligence proximately caused her injuries. A finding of negligence, unaccompanied by a finding that such negligence was a proximate cause, would not be sufficient to establish the defense. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 989.

We have no authority to disregard these negative findings on proximate cause if there was any evidence to support them or if reasonable minds could differ as to the inferences reasonably to be drawn from the testimony. In either event an issue of fact is raised and the findings of the jury thereon cannot be disturbed by us. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, 276; Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792.

"While there may be cases in which a court would be warranted in holding [as a matter of law] an act of negligence to be a proximate cause of an injury, such cases are extremely rare and generally the question of proximate cause is one of fact. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063." Luvual v. Henke & Pillot, Division of Kroger Co., Tex.Civ.App., 366 S.W.2d 831, 836, err. ref. n. r. e.

In determining whether the findings have sufficient support in the evidence, we must and do indulge all reasonable presumptions and intendments to support the same. 3–B Tex.Jur. Appeal and Error, § 911, p. 370; Thompson v. Bob Tankersley Produce Co., Tex.Civ.App., 289 S.W.2d 840, err. ref. n. r. e.; Watt v. Texas State Board of Med. Examiners, Tex.Civ.App., 303 S.W.2d 884, err. ref.

An application of the foregoing rules persuades us that the appellant's first four points of error are without merit, and they are therefore overruled.

The jury may have inferred from the evidence that even if Mrs. Holmes had caught hold of the handrail this would not have prevented her fall; or, it may have properly inferred that under all the facts and circumstances Mrs. Holmes could not reasonably foresee that an accident would occur, or that she would fall, because of her failure to use the handrail. Either inference could properly have been drawn from the evidence and, under the law and the definition of "proximate cause" given by the court in the charge, would have warranted the jury in giving negative answers to both proximate cause issues.

Since there was no direct evidence that Mrs. Holmes' use of the handrail would have prevented her fall, and reasonable minds could differ as to the effect of the circumstantial evidence, a directed verdict on the issue of proximate cause would not have been in order. As judgment *non obstante veredicto* is authorized only if a directed verdict would have been proper, it follows that there was no error in overruling the motion. Rule 301, Vernon's Texas Rules of Civil Procedure.

Appellant also contends that the negative findings on proximate cause are so against

the great weight and preponderance of the evidence that they should be set aside. A careful review of all of the evidence in the record fails to support this contention and it is therefore overruled. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ We turn now to a consideration of appellant's remaining twelve points which, according to appellant, together assert that there was reversible error in the manner in which the court submitted to the jury the special issues presenting appellees' theory of the case. This theory was submitted in three sets of special issues summarized as follows:

1) Special Issues Nos. 1–3 inquiring as to whether appellant "failed to provide a safe place for Savannah Holmes to walk", and whether such failure, if any, was negligence and a proximate cause of appellee's injuries;

2) Special Issues Nos. 4–6 inquiring as to whether appellant "maintained a step at the top of the landing of the stairs in question with a loose metal strip thereon", whether such conduct, if any, was negligence and a proximate cause of appellee's injuries; and

3) Special Issues Nos. 7 and 8 inquiring as to whether appellant "failed to exercise ordinary care in installing and maintaining the metal strip on the edge of the top of the landing", whether such failure, if any, was a proximate cause of appellee's injuries.

Appellant objected to these special issues on two grounds: first, that Special Issues Nos. 1 and 7 were multifarious and duplicitous in that No. 1 was nothing more than "a general charge of negligence" and No. 7 inquired into the existence of more than one material fact; second, that each of the above sets of issues was duplicitous of the other in that they inquired about the same matters and facts.

We think there can be little doubt but that Special Issue No. 1, which inquired as to whether appellant "failed to provide a safe place for Savannah Holmes to walk," partakes *of the nature of* a general charge in that it submits the several specific acts of negligence alleged by appellees in one general inquiry.

"When one pleads and relies upon specific acts or omissions of negligence, it is not proper to submit issues as to negligence in general terms. To inquire whether defendant maintained the steps in a reasonably safe condition is to submit an issue 'general in nature portraying the whole of plaintiff's pleadings; thus concealing under a mass of generalities the facts relied upon for recovery.'" McDonald v. Joske's of Texas, Tex.Civ.App., 268 S.W.2d 475, no wr. hist.

In Clary v. Morgan Motor Co., Tex. Civ.App., 246 S.W.2d 936, no wr. hist., it was held to be improper to inquire of the jury as to whether a defendant "failed to maintain the premises in a safe condition." See also City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125, and Missouri-Kansas-Texas R. Co. v. Roberts, Tex.Civ.App., 225 S.W.2d 198, err. ref. n. r. e. Therefore we hold that it was error for the court to submit Special Issue No. 1 over appellant's said objection.

■ We hold also that it was error for the court to submit Special Issue No. 7 inquiring as to whether appellant "failed to exercise ordinary care in installing and maintaining the metal strip on the edge of the top of the landing," over appellant's objections that it inquired into the existence of more than one material fact, to-wit, (1) whether appellant installed the metal strip, (2) whether appellant maintained the metal strip, (3) whether appellant was negligent in installing the metal strip, and (4) whether it was negligent in maintaining the metal strip. The issue as submitted was multifarious in that it inquired about a number of different facts which should have been

inquired about in separate issues. Hodges on Special Issue Submission in Texas, Ch. VI, § 42, p. 113.

 Appellant's objection to Special Issue No. 7 on the ground that there was no evidence relating to the installation of the metal strip was properly overruled. We consider the testimony of the witness Davidson to be at least some evidence of the installation. He said that in 1958 he took the screws out of the strips, cut the linoleum out from under them and then lowered the strips so they would be flush with the rest of the linoleum. This was in practical effect an "installation."

■ Appellant also attacks the submission of all of the special issues bearing on appellant's alleged negligence (Nos. 1 through 8) on the ground that they are duplicitous, each submitting a shade or phase of the other and, in effect, submitting the same fact question in different form. It is argued that the vice in this manner of multiple submissions is that it places an undue emphasis upon the claimant's theory of the case. We agree that appellant's case was probably prejudiced by this manner of submission.

When all of the evidence was in it should have been apparent that, although more than one act of negligence on the part of appellant was alleged, only one was raised by the evidence, requiring the submission of only three issues: (1) whether a defect in one of the stairs existed, (2) whether appellant was negligent in permitting it to exist, and (3) whether such negligence, if any, was a proximate cause of Mrs. Holmes' injuries.*

Because of the undue emphasis it may give to a single issue in the consideration of the jury, there is good authority for holding that this manner of submission of the same fact issue in several different forms will so prejudice the losing party as

to constitute reversible error. 41–B Tex. Jur., Trial—Civil Cases, § 488, p. 651; Covington v. Howard, Tex.Civ.App., 347 S.W.2d 802, err. ref. n. r. e.; Lone Star Gas Co. v. Ballard, Tex.Civ.App., 138 S.W. 2d 633, 636, err. ref.; Dallas Ry. & Terminal Co. v. Bishop, Tex.Civ.App., 153 S. W.2d 298, 304, no wr. hist.; Ellis v. Lewis, Tex.Civ.App., 142 S.W.2d 294, no wr. hist.; Texas & Pac. Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280.

For the reasons hereinabove assigned, the judgment is reversed and remanded for another trial.

Reversed and remanded.

---

* Upon another trial other fact issues may develop which, if he deems them to be material, the trial court should not hesi- tate to submit because of what we have said above.