**David KER et al., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 5918.**

Court of Civil Appeals of Texas.

El Paso.

Jan. 17, 1968.

Rehearing Denied Feb. 14, 1968.

**312**

———◆———

Andress, Woodgate & Condos, Dallas, for appellants.

Crawford Martin, Atty. Gen., Samuel D. McDaniel, Asst. Atty. Gen., Austin, for appellee.

## OPINION

PRESLAR, Justice.

This is an appeal from a summary judgment granted the State of Texas decreeing that the appellants, Ker, et al., have no easement to cross U. S. Highway 80 at a point near Pyote, Texas, and that the practices of appellants are subject to the valid exercise of the police power of the State of Texas to regulate traffic and promote the safety and welfare of the traveling public. Both parties filed motions for summary judgment. That of the Kers was de-nied, the State's was granted, and both parties now concede that there is no issue of fact and that a pure question of law is presented as to whether or not the Ker interests have an easement.

The easement question arose out of condemnation proceedings for right of way for Interstate 20 when the Kers contended that the easement was a property right for which they were due payment. The State denied the existence of the easement, so that a question of title to an interest in realty was presented and, same being beyond the jurisdiction of the county court, the State brought this suit in District Court for determination of the title question, and was granted the summary judgment from which this appeal is taken.

The Kers are lessees from the University of Texas of lands, with warehouses, adjacent to Highway 80 and for a number of years have used such lands for the warehousing and storage of cotton. During such years they have trucked cotton from their storage facilities across Highway 80 to loading docks of the T. & P. railway. Highway 80 is being changed to a controlled access facility, Interstate 20, and the Kers will no longer be able to move their cotton directly across the highway from their leased facilities to the railway loading docks, but will be required to cross at a grade separation located approximately a mile and a quarter from their warehouses. It is the Kers' position that under their lease from the University, they acquired an easement to cross the highway at a point opposite their storage facilities, and that the State, through its University, having collected rents for the easement, cannot now deny its existence, and that the Kers, for four years prior to suit, made an open, notorious and visible and undisturbed use of the premises. The lease from the University of Texas to the Kers sets forth that the University, as lessor, leases, lets and demises to the Kers a portion of the premises known as Pyote Air Base, and describes the area, the warehouses and other facilities in detail and the uses to be made

of such improvements. Included in the detailed description of the items leased is the following:

"Rail Spur Track on leased premises and easements for the Spur to the T. & P. Railway not in conflict with any highway easement for full use thereof; * * *"

In addition to this lease there was a supplemental lease from the University to the Kers, and several assignments among the Ker interests which were approved by the University, and all contained language similar to the above quoted. The language is not the granting clause in the lease, but is descriptive of a portion of the leasehold estate. Appellants say it refers to Easement No. 247, which was an easement for highway purposes executed in 1945 by the University to the State Highway Commission for U. S. 80. Prior to that (in 1942) these lands had been leased to the United States government for a military air base, ultimately became surplus, and were surrendered to the University about one month before it was leased to the Kers. The Texas & Pacific Railway had a trackage right of way across a portion of these lands during the time it was an air base, which was connected to its main tracks by a spur across Highway 80, and one Jim Thornton at one time had a grazing lease on a portion of the lands. Easement No. 247 recited that it was subject to: "Easement held by U. S. Government and lease held by Jim Thornton". From all this, appellants urge that one of the properties leased by them was an "easement for the spur to the Texas & Pacific Railway not in conflict with any highway easement", and that the highway easement was subject to "Easement held by U. S. Government and Jim Thornton".

We are of the opinion that this argument is without merit, for appellants did not succeed to the rights of the U. S. government or Jim Thornton. There was no assignment of their leases to appellants; but, on the contrary, appellants took a lease of the property directly from the University of Texas, and any rights acquired must come from such lease instrument. Any easement acquired by appellants was subject to any highway easement, and the affidavits and instruments attached to the State's motion for summary judgment show that Highway 80 was in its present location as early as 1923, and that University Easement No. 119, executed in 1939, is a grant of additional right of way for improvements at that time, as was Easement No. 247 in 1945. Appellants, the Kers, acquired their first lease in 1958, and prior to that the railroad tracks had been removed at the point where they crossed Highway 80, and the Texas and Pacific Railway, on June 5, 1957, spiked its switch from its main tracks to the spur on the lands in question. The railway company constructed loading docks adjacent to its main tracks, and for some four years appellants used warehouse-type tugs and dollies for transporting cotton across U. S. Highway 80 from its leased facilities to such docks. While this was an open and obvious use, it adds little to appellants' claim, for the public generally had the right to use and cross Highway 80, and so could appellants without an easement.

Appellants quote the applicable law from 21 Tex.Jur.2d 131, Easements, Section 12:

"There are various methods by which an easement may be created, such as by express grant, by implication (as a way of necessity), by estoppel, or by prescription, but regardless of the manner in which an easement may arise, it must be derived from the owner of the servient estate. Since easements are interests in land, they may be created only by deed or grant, and the party claiming the right must exhibit documents showing this fact or give evidence from which the grant may be implied."

The record before us does not reflect that appellants met this burden, and the trial court correctly granted summary judgment for the State.

The judgment of the trial court is affirmed.