**WILLIAM B. PATTON TOWING COM-
PANY, Appellant,**

v.

**J. J. SPILLER, Jr., Appellee.**

No. 213.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

April 23, 1969.

Rehearing Denied May 21, 1969.

Dan H. Hinds, F. E. Billings, Hinds & Meyer, Houston, for appellant.

Wiley Thomas, Vaughan O. Stewart, Angleton, for appellee.

SAM D. JOHNSON, Justice.

This is an admiralty collision case in which a tug towing two barges and owned by the appellant collided with a pier owned by the appellee.

The plaintiff, J. J. Spiller, Jr., built an L-shaped pier on the San Bernard River in 1966. This river is one of the navigable waters of the United States and is used for commercial barge traffic. It is a winding, narrow public waterway with many steep bends and turns.

The pier built by the plaintiff is in an S-turn of the river. At the site of the collision the river is 100 to 130 yards wide. The deep water channel of the river is much closer to the outside bank of the bends of the river. At the particular bend of the river on which this pier is located the deep water channel is only 30 to 40 feet from the pier. The pier protruded out into the river 24 feet and extended down river some 22 or 23 feet.

The defendant, William B. Patton Towing Company, was the operator of the tug, the C. G. Andler. On the date of the collision this tug was traveling upstream on the San Bernard River with two empty barges in tow. The barges were attached by what is called a hawser and bridle, about 15 feet in length. This connection not only attached the three vessels together but also permitted them to navigate the bends and turns of the river, as the tug and her barges extended a total of 475 feet in length. As the tug rounded the first bend in the S-turn on the date of the collision its barges "floated out" of the deep water channel and drug the bank. At about 15 to 20 feet from its stern, the second barge then struck Spiller's pier, causing its destruction. Spiller brought suit for the damages that were thus occasioned alleging that the C. G. Andler negligently collided with his pier.

Section 10 of the Rivers and Harbors Act of 1890, 26 Stat. 426, 454, forbids "the creation of any obstruction, not affirmatively authorized by law, to the navigable capacity" of any waters of the United States. Title 33, U.S.C. Sec. 403, provides: "The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier * * * or other structures * * * except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army * * * unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

It is undisputed that Spiller had not obtained a permit from the United States Corps of Engineers for the building or maintenance of his pier and that it was

built and maintained without the required authorization.

Appellant therefore contends that as the San Bernard River is a navigable water of the United States it is "open to navigation from shore to shore, subject only to natural obstructions and to such artificial obstructions as are legally there." The Robaliss, III, 45 F.2d 199, 201 (S.D.N.Y.1930) modified on other grounds, Corby v. Ramsdell, 2 Cir., 48 F.2d 701, and that the right of the C. G. Andler to navigate its waters was not restricted to the "main, channel, but extends to the water between high and low water marks, or from shore to shore, subject only to natural obstructions and lawful artificial obstructions." 65 C.J.S. Navigable Waters § 20, p. 132. This being true, appellant reasons, the tug and her barges were entitled to the unobstructed use of all of the navigable waters of the river. Atlee v. Northwestern Union Packet Co., 88 U.S. 389 (21 Wall. 389), 22 L.Ed. 619 (1874).

The appellant contends that if Spiller had not obstructed the San Bernard River by building his pier out 24 feet from the bank as he did, the collision could not have occurred. Further, that Spiller violated a statute which was designed not only to protect the public's right to the unobstructed use of navigable waters, but also to prevent collisions and to protect vessels from harm arising from collisions with unlawful obstructions.

The trial in the court below correctly proceeded on the theory that when a vessel collides with a structure built or maintained in violation of the provisions of 33 U.S.C.A. Sec. 403, the owner of the violating structure must *prove* that the violation could not have caused or contributed to the collision. The Pennsylvania Rule [The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874)] requires that for Spiller to recover, he must prove his statutory violation in building and maintaining the pier could not have caused or contributed to the collision. The burden was on the plaintiff to present evidence and establish

not only that the C. G. Andler was negligent but also that his own violation could not have caused or contributed to the collision.

In response to Special Issue No. 6, which we believe to be the critical issue in this case, the jury found that the construction of the plaintiff's pier at the location in question "could not have contributed" with any reasonable possibility to cause the damage in question. It is appellant's position that there is no evidence, or in the alternative, that the evidence is insufficient, to support the jury's finding.

An extended citation of authority in the field of maritime law would be of little service to the jurisprudence of this state. Its broad principles sufficiently frame the issues to be resolved here.

An unlawful obstruction to navigation is prima facie a nuisance. When a vessel strikes such an obstruction to navigation there is no presumption of negligence on the part of the vessel. "Since navigable waters are, so far as practicable, to be kept clear for navigation, the proprietor of a bridge or pier which unlawfully obstructs such waters is liable if a vessel is injured by collision with the structure. * * *" Griffin, The American Law of Collision, 1949, Sec. 263, p. 603. If there is no permit for the structure the party creating it is held to be at fault and such fault is held to be contributory unless it is proven it could not have contributed to the collision. The courts of our state have determined that "where a statute requires the doing of an act, or prohibits the doing thereof, the violation of such statute constitutes negligence as a matter of law." Clem Lumber Co. v. Fisher, 84 S.W.2d 282, 285, (Tex.Civ.App.1935), writ dismd.; McCall v. Alpine Telephone Corp., 183 S.W.2d 205, 208, 210, (Tex.Civ.App.1944), affirmed, 143 Tex. 335, 184 S.W.2d 830, 833, 834, (1945).

In United States v. Norfolk-Berkley Bridge Corp., 29 F.2d 115, 125, 1928 A.M.C.

1636 (E.D.Va.1928), the court in speaking of a bridge which was an unlawful obstruction to navigation stated, "While such a structure may not be injured negligently by a passing vessel with impunity, nevertheless the vessel which strikes it is not presumptively negligent or careless, but the bridge owner is presumptively at fault, unless he can show that the failure to comply with the requirements was not one of the factors or causes which contributed to the injury. The bridge owner is entitled to recover from the ship only if he can show that the failure to comply with the law was in no way responsible for or contributed to the accident or disaster."

The plaintiff here attempted to meet the burden of proof that was upon him and in so doing called as his witnesses, among others, the crew of the C. G. Andler. These witnesses testified that the boat was being properly handled but that the inherent nature of the river and the type of commerce which uses it makes it impossible to keep from "dragging" the banks when rounding its bends. Other testimony showed that the tugs draw about seven feet of water and must remain in the deep water channel or face the probability of going aground. Barges, on the other hand, draw only eighteen inches of water and are not confined to the deep water channel. It is in fact impossible to restrain the barges' movement to such deep water channel. In a movement described as being like a "whip" the barges always swing toward the outside when rounding bends. When this occurs, it is not unusual for the towed barges to float out and strike the outside bank of the channel. This is not an occasional occurence; it customarily happens. From the testimony it appears that it is impossible for it not to occur.

Both the plaintiff and his wife testified that it is not unusual for the barges to drag the bank near their property. A neighbor of the plaintiff who witnessed the collision testified that the barges in the instant case drug "to the shoreline" as the tug came around the bend in the river. Other testimony showed that this same plaintiff owned a similar pier in this same location that had previously been destroyed under circumstances that parallel those in the instant case.

We believe it therefore apparent that if the plaintiff's pier had not protruded into the navigable waters of the river as they did no collision would have occurred. Stated another way, except for the presence and protrusion of the pier into the river the barges would have cleared. Under these circumstances it cannot be said that the construction and maintenance of a pier of these dimensions in this location could not have contributed to the collision. On the contrary, we believe the plaintiff's evidence shows that the pier's size and location was shown to be the only cause of the collision other than the winding nature of the river itself.

It must be noted that the plaintiff made no showing that the pier was not in a hazardous position or that it was not a hazardous pier. Neither did the plaintiff show that the required authorization for the permit could have been obtained if it had been applied for.

The fact that the pier was stationary or that it did not extend to the deep water channel is not controlling. In American Dredging Co. v. Calmar S. S. Corp., 121 F.Supp. 255, 263 (E.D.Pa.1954), affirmed, 218 F.2d 823 (3rd Cir. 1955), a ship was held not at fault where it collided with a non-moving and anchored barge outside the ship channel. In holding the anchored barge solely at fault the court stated, "I know of no rule of law which limits the navigation of a vessel to a ship channel, as a land vehicle such as an automobile would be limited to operation on a highway * * * The vessel may navigate at any part of a river containing navigable water." So it is in the instant case. *All* of the waters of the river were navigable. All the waters of the river were required for navigation.

We believe that special issue number 6, in which the jury found that the construction of plaintiff's pier at the location in question could not have contributed with any reasonable probability to cause the damage in question is without support in the evidence. Plaintiff's own evidence established a lack of negligence on the part of the C. G. Andler and conclusively establishes that which is diametrically opposed to the jury's finding on special issue number 6.

Though appellant presents numerous other special issues it is not necessary that they be considered for the disposition of this case.

The judgment must be reversed and rendered for the appellant.