**H. E. BUTT GROCERY COMPANY,**
Appellant,

v.

**Mrs. Effie QUICK et vir, Appellees.**

No. 14739.

Court of Civil Appeals of Texas.

San Antonio.

May 28, 1969.

Rehearing Denied June 25, 1969.

Groce, Hebdon, Fahey & Smith, San Antonio, for appellant.

· Sidney Callender, Carter, Callender, Onion &·Branton, San Antonio, for appellees.

BARROW, Chief Justice.

This is an appeal from a judgment rendered on a jury verdict whereby appellees, Effie Quick and husband, B. B. Quick, recovered the sum of $12,500.00 for damages sustained by Mrs. Quick in a fall on the premises of appellant, H. E. Butt Grocery Company's Store No. 15 in San Antonio, Texas. We heretofore affirmed an order overruling appellant's plea of privilege. See Tex.Civ.App., 396 S.W.2d 541 (1965, no writ).

The case is somewhat different from the usual "slip and fall" case in that Mrs. Quick does not assert that the fall resulted from any foreign substance on the premises. Rather, she urges that an asphalt ramp leading from a sidewalk, approximately nine inches high, to the parking lot had become slick and slippery through continued use during the nine years following its construction. The jury found: 1. H. E.B.· constructed the ramp of materials which permitted the ramp to become slick and slippery through continued use. 2. Such act was not negligence. 4. At the time of and immediately prior to Mrs. Quick's fall, H.E.B. had permitted the ramp to become slick and slippery. 5. H. E.B. was negligent in doing so. 6. Such negligence was a proximate cause of Mrs. Quick's fall. 7. H.E.B. was negligent in failing to remedy the slick and slippery condition. 8. Such negligence was a proximate cause of Mrs. Quick's fall. 9. She did not fail to keep a proper lookout.

11. The sum of $12,250.00 would fairly and reasonably compensate Mrs. Quick for her physical and mental pain in the past and in the future. 12. The sum of $250.00 would fairly and reasonably compensate Mrs. Quick for certain medical expenses incurred by her as a proximate result of her fall.

It is seen that the liability of H.E.B. is based on the findings to Questions Nos. 4–8. H.E.B. complains of the form of each of these questions, and also urges that there is no evidence or insufficient evidence to support the jury finding as to each question. The complaint as to the form of the questions relates to the overruling of appellant's objections to the effect that said questions were global and general in nature because of the use of the terms "permitting" and "failing to remedy."

The accident occurred about 8:00 p. m. on November 12, 1962, which was a damp, foggy night. Mrs. Quick, then 57 years of age, had gone to this store with her husband to purchase a couple of grocery items. While Mr. Quick was paying for same, Mrs. Quick left the store to return to their car, which was parked head-on to the sidewalk leading into the store. The ramp had been continuously used from the time of its construction in 1953, primarily for grocery carts to go up and down when taking groceries to the customers' automobiles. This ramp was about 36″ wide and constructed of asphalt with a rough finish. It is not established as to whether small perforations were placed in same for traction before or after Mrs. Quick's fall. Although a regular customer of the store, Mrs. Quick had not previously used this ramp. She testified that she looked at the ramp before stepping on it and did not notice anything unusual about it. Actually, the lighting conditions were such that about all Mrs. Quick could tell was that there was no foreign substance on the ramp. As she stepped on the ramp, her right foot slipped and she fell on her left hip and back. She immediately felt the ramp and it was "real slick"—"slick as glass." Her daughter testified that she examined the ramp the next day, and near the center the asphalt was worn down and slick. An engineer with considerable experience in the use of asphalt testified that a ramp of this material would become worn and very slick with continued use over this period of time. He also testified that such a condition could be easily and cheaply corrected by use of carborundum strips or by applying epoxy (a glue product) and then sprinkling the ramp with coarse sand. The jury could infer from the testimony of H.E.B.'s manager that there had been previous falls from use of this ramp, although none "to this extreme."

█ This testimony is evidence more than a scintilla in support of the verdict of the jury when same is considered under the "no evidence" test.[1] Furthermore, we cannot say after an examination of the record as a whole that the jury's answer to Question No. 4, 5, 6, 7 or 8 is so against the great weight and preponderance of the evidence as to be manifestly unjust. We therefore overrule appellant's points asserting that the jury's findings to these questions are factually insufficient or manifestly wrong and unjust.

█ A more difficult question is raised regarding the form of the issues. Under Rule 279, Texas Rules of Civil Procedure, the trial court is required to give "the controlling issues made by the written pleadings and the evidence." However, the Texas Courts are committed by precedent to give one meaning to this Rule in negligence cases and a somewhat different meaning in other type cases. As a general rule, special issues relating to either primary or contributory negligence should be restricted to specific acts which have been raised by the pleadings and the evidence. Barclay v. C. C. Pitts Sand and Gravel Co., 387 S.W.2d 644 (Tex.Sup.1965); Holmes

1. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965).

v. J. C. Penney Co., 382 S.W.2d 472 (Tex. Sup.1964); J. C. Penney Co. v. Holmes, 378 S.W.2d 105 (Tex.Civ.App.1964); Jack Cane Corporation v. Gonzales, 410 S.W.2d 953 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.); Pope, Broad and Narrow Issues, XXVI Texas Bar Journal 921.

■ The occupier of premises owes a duty to use ordinary care to keep his premises in a reasonably safe condition for his invitees, or to warn of the hazard. J. Weingarten, Inc. v. Razey, 426 S.W.2d 538 (Tex.Sup.1968). This includes the duty to inspect and to discover dangerous conditions. His duty is to protect his invitees from danger of which he, the occupier, knows or (because of his duty to inspect) should know in the exercise of ordinary care. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963); McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); H. E. Butt Grocery Company v. Quick, supra.

■ Appellees' basis for recovery is that the ramp had become slick and slippery through long use and that H.E.B. was negligent in failing to correct this dangerous condition. There was testimony that an asphalt ramp would become slick when used for as long as nine years, and also there was sufficient testimony that this particular ramp was slick on the occasion in question. Question No. 4 inquired as to whether H.E.B. had permitted the ramp to become slick and slippery before the time Mrs. Quick fell. The obvious purpose of this question was to inquire as to whether the ramp was slick and slippery as a result of long use. In Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948), the Supreme Court recognized that the bank might have been responsible for the stairs being slick, if it permitted the stairs to become and remain slick by reason of their use over a period of years by the bank's employees and customers. A similar issue was held proper in Alamo National Bank of San Antonio v. Hazlitt, 92 S.W.2d 315 (Tex.Civ.App.—El Paso 1936, writ dism'd), over defendant's objection that same was upon the weight of the evidence. H.E.B. apparently understood the purpose of such question in that it made no objection to the failure of the court to submit an issue as to whether the ramp was slick and slippery. By use of the term "permitting" the trial court limited the cause of the condition to long use, as asserted by appellees. Although we doubt the necessity of including this term in this question, we do not see that H.E.B. was harmed by same.

■ No issue was submitted as to whether H.E.B. knew, or should have known, of the ramp's slick and slippery condition prior to Mrs. Quick's fall. H.E. B. has no point complaining of the failure to submit such an issue, although argument to this effect is made under other points. There was no objection to the failure of the court to submit such an issue and therefore the parties are presumed to have waived a jury trial of such issue and the trial court is presumed to have made a favorable finding thereon for appellees. Rule 279, T.R.C.P. Such a finding is supported by sufficient evidence. H. E. Butt Grocery Company v. Johnson, 226 S.W.2d 501 (Tex.Civ.App.—San Antonio 1949, writ ref'd n. r. e.). The issue, therefore, was presented as to whether H.E.B. was negligent in failing to correct this dangerous condition. Such disputed issue was resolved by the jury's answer to Question No. 5 as well as No. 7.

■ The complaint is made to Question No. 7 as to use of the term "failing to remedy" in that it does not inquire specifically as to what H.E.B. should have done to correct the dangerous condition of the ramp. We do not believe it would have been proper to break down said issue so as to inquire if H.E.B. was negligent in failing to apply the carborundum strips, the glue product, or any other specific remedy, in that such an inquiry would be evidentiary and probably a comment on the evidence under this record. The issue in dispute was whether H.E.B. was negligent in failing to correct the slick and slippery condi-

**802**

tion of the ramp. Actually, appellees alleged that H.E.B. was negligent in failing to use carborundum strips, but H.E.B.'s special exception to same was sustained, thereby leaving in said petition the allegation, which was submitted of H.E.B.'s failure to remedy the slick and slippery condition. An examination of the pleadings, the evidence and the argument of counsel demonstrates that the theories of the parties were fairly submitted by the charge of the court. Reversible error has not been shown by the overruling of appellant's objections to the charge. Rule 434, T.R. C.P.

Appellant urges by two points that the trial court erred in overruling its objections to the closing argument made by appellees' attorney. In response to appellant's argument as to why appellees had not called Dr. Hardy as a witness, although Mrs. Quick had been examined by this doctor at the request of her attorney, appellees' attorney replied in part: "He says 'They don't call Dr. Hardy.' Let me suggest something to you. You remember what I asked Dr. Stool, what he was going to charge H.E.B. for coming down here. He said, '$100.00'. Does that suggest to you any reason why Mrs. Quick did not call Dr. Hardy?" A somewhat similar reply was made regarding Dr. Dupre, who testified only by written interrogatories. Appellant timely objected to each argument and now urges that same was improper and prejudicial as an attempt to contrast the supposed poverty of appellees with the supposed wealth or affluence of appellant.

The test for reversal for improper argument is that it must appear not only that the argument was improper, but that it was such as to satisfy an appellate court, after a review of all the record, that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Texas Sand Company v. Shield, 381 S.W.2d 48 (Tex.Sup. 1964); Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (Tex.Sup.1953).

Clearly, it is improper argument to appeal to the passion and prejudice of the jurors by attempting to contrast the relative financial positions of the parties. Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625 (Tex.Sup.1941); State v. Jauernig, 395 S.W.2d 923 (Tex. Civ.App.—San Antonio 1965, writ ref'd n. r. e.); Texas General Indemnity Co. v. Savell, 348 S.W.2d 202 (Tex.Civ.App.—San Antonio 1961, no writ). However, we do not understand the argument complained of here as being such a contract between the relative financial positions of the parties. Rather, it is an attempt to excuse appellees' failure to produce certain medical testimony by a lack of personal funds. There was some evidence admitted without objection of such situation. Dr. Stool, who had treated Mrs. Quick for several months, was called as a witness for H.E.B., and on cross-examination testified that Mrs. Quick was reluctant to go to the hospital for lack of finances. In any event, we have considered all the arguments made in this case in the light of the entire record, and we cannot say that the arguments complained of here were such as were reasonably calculated to cause and probably did cause an improper verdict. Any error in same was therefore harmless. Rule 434, supra.

Appellant's remaining points complain of the jury finding that the sum of $12,250.00 would fairly and reasonably compensate Mrs. Quick for her past and future physical and mental pain and suffering. Appellant urges that there is no evidence or insufficient evidence to support such finding, and that said amount is grossly excessive by at least $9,000.00.

Mrs. Quick was 57 years of age at the time of the fall, and 63 at the time of the trial. She had been married for over forty-five years and reared a family of five children. There is no evidence that she had been gainfully employed outside her home. However, prior to the fall she was in good health and did all her own housework as well as taking care of her yard. She went home with her husband immedi-

ately following the fall, but was unable to sleep that night because of the pain in her back, legs and shoulders. The next day she called her family doctor, who sent her to Dr. Stool, an orthopedic surgeon. Dr. Stool regularly treated Mrs. Quick until May 4, 1963. He verified her complaints of severe pain and limited movement in her back during this period, and by his interpretation of the x-rays diagnosed a fracture of the twelfth thoracic vertebra. Dr. Stool hospitalized Mrs. Quick for a period of two days and one night in December, 1962, and subsequently prescribed physical therapy for her. Dr. Stool saw her last on March 28, 1964, and although she still complained of back pain, he did not examine or treat her. His bill was $110.00 and the hospital bill was $156.00. After her release from Dr. Stool, Mrs. Quick saw a general practitioner in her neighborhood off and on about twenty times. Some of her treatment by this doctor related to other ailments, but this doctor testified that she complained of headache and aching in her back when he last saw her on May 17, 1967. He testified that his treatment of her was necessary by reason of injuries sustained in the fall.

Mrs. Quick testified that she had suffered from severe headaches much of the time since the accident. She also has suffered much back pain and at the time of the trial was still taking pills to relieve this pain. She testified that although she had good and bad days, she was still unable to do much of her household and yard work. Specifically, she could not mop or do any work which required her to stoop. She had bad days when she could not even cook. This testimony was substantially verified by her husband and daughter.

The applicable rule for considering appellant's points of excessive damages was stated by this Court in Green v. Rudsenske, 320 S.W.2d 228, 235 (1959, no writ), as follows: "The law is settled that before an appellate court will disturb a judgment rendered upon a jury verdict, on the grounds that such verdict is excessive, there must be circumstances tending to show that it was the result of passion, prejudice or other improper motive, or that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and court, or so excessive as to shock a sense of justice in the minds of the appellate court." See also: Houser v. Sunshine Laundries & Dry Cleaning Corp., 438 S.W.2d 117 (Tex.Civ. App.—San Antonio 1969, writ ref'd n. r. e.); Missouri Pacific Railroad Co. v. Miller, 426 S.W.2d 569 (Tex.Civ.App.—San Antonio 1968, no writ); Ruffo v. Wright, 425 S.W.2d 663 (Tex.Civ.App.—San Antonio 1968, no writ).

██ Here the damages are based almost entirely upon subjective complaints of Mrs. Quick, extending over a six-year period. Such complaints are corroborated by lay and medical testimony. The credibility and weight to be given the testimony of the witnesses are within the province of the jury, and we are not authorized to substitute our judgment for that of the jury simply because we might have reached a different conclusion from said facts. We cannot say from an examination of this record that the damages awarded to Mrs. Quick are without support or that they are so excessive as to shock our sense of justice, or so unreasonable as to require a remittitur.

Appellant has failed to demonstrate reversible error by its assignments of error. The judgment is therefore affirmed.