David KER et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 6145.

Court of Civil Appeals of Texas, El Paso.

Dec. 30, 1970.

Rehearing Denied Jan. 27, 1971.

Andress, Woodgate & Hartt, William Andress, Jr., Dallas, for appellants.

Crawford C. Martin, Atty. Gen., Donald R. Jones, Dudley Fowler, Charles R. Lind, Wm. H. Pool, Watson C. Arnold, Nola White, Alfred C. Walker, Asst. Attys. Gen., and Meade F. Griffin, Staff Legal Asst. Atty. Gen., Austin, for appellee.

## OPINION

WARD, Justice.

This is the condemnation suit for right of way for the construction of Interstate 20 as contemplated in the opinion of this court in Ker v. State, 424 S.W.2d 311 (1968, wr.ref., n.r.e.). There, it was determined that the appellants held no easement to cross Highway 80 from their cotton warehouses to the railroad loading docks. The State has now condemned the Kers' leasehold interest to some .31 acres of land under their business lease on some 200 acres, and also condemned some 15.14 acres of land under a grazing lease of 2,248 acres of land lying adjacent to the land under the business lease. The Kers having appealed, we affirm the judgment of the trial court.

A brief review of the facts reveals that the Kers were lessees from the University of Texas of a portion of the old Pyote Air Base containing warehouses and facilities suitable for the storage of cotton. All of the leased premises were adjacent to, and lay to the south of Highway 80, which has now been converted to Interstate Highway 20 and is a controlled access, divided highway with two-way frontage roads on the north and south sides of the main lanes. All of the Kers' leased property now has full access to the south frontage road and

no complaint is made as to the deprivation of any right of access. The dispute is due to the fact that before the construction of the controlled access, divided highway, the Kers, in the operation of their cotton warehouse, had been able to haul their cotton directly across Highway 80 to its north side, some 300 feet, to a loading dock built and owned by the Texas and Pacific Railroad. After the construction of the new divided highway, they could no longer cross directly from their warehouse to the loading dock, but, instead, were required to have their cotton hauled easterly down the south frontage road, a distance of one and one-half miles, then across a grade separation over Interstate Highway 20, then westerly on the north frontage road back to the T. & P. loading dock. This trip, together with the return trip, consisted of some six miles, instead of the previous 300 feet directly across the highway. More important, the Kers no longer could use their low-boys, but were forced to load their cotton on to full trucks and trailers permitted to travel on Texas highways. At the trial, stipulations were made as to the State's right to take, and the only issues submitted were the market value of the part taken and diminution in value of the remainder. In answer to Special Issue No. 1, the jury found the value of the Kers' leasehold interest in the part taken to be $0.00. In answer to Special Issue No. 2, the jury found the market value of the leasehold interest in the remainder immediately before the taking to be $90,000.00, and by Special Issue No. 3, it found the market value of the leasehold interest in the remainder immediately after the taking to be $88,750.00. Judgment for $1,250.00 was entered on the jury's verdict.

The trial court sustained the State's motion in limine to suppress any evidence of the Kers' prior practice of crossing the highway directly to the loading dock, and to any inconvenience caused by the circuity of travel occasioned by the new facility. As established by the Kers' bills of exception, the appellants have been

financially damaged. Before the taking, it had cost them 10¢ a bale to move the cotton across the road on their low-boys, and after the taking the cost arose to 50¢ a bale for the hauling. The value of a cotton warehouse some 300 feet to trackage with loading docks is much more than one with the facilities some six miles away. From a profitable venture before the taking, the business had become a losing operation. It is to the action taken by the court in ruling on the motion in limine and excluding this testimony that the appellants have presented their primary points.

No complaint being made as to deprivation of any right of access, the previous Ker case, supra, controls. We held that no easement to cross the highway existed. The establishment and construction of the divided highway, together with the requirement that the divided highway be crossed only at designated points was undertaken by the State in the exercise of its police power. The establishment of divided highways whereby U-turns or crossings are prevented except at designated points is consistently held to be reasonable. Diversion of traffic resulting in the necessity of using the circuitous route is not compensable. City of Houston v. Fox, 444 S.W.2d 591 (Tex.1969); City of Beaumont v. Marks, 443 S.W.2d 253 (Tex.1969); State v. Baker Bros. Nursery, 366 S.W.2d 212 (Tex. 1963); City of San Antonio v. Easley, 368 S.W.2d 683 (Tex.Civ.App., San Antonio 1963, wr.ref. n.r.e.). There has been no deprivation of a pre-existing right of complete access to the railroad. This case, therefore, differs on its facts from Southwestern Bell Telephone Company v. West, 456 S.W.2d 143 (Tex.Civ.App., Texarkana 1970, wr.ref. n.r.e.). The trial court properly sustained the motion in limine, and its action in forbidding the offered evidence was correct.

■ By two separate instructions, the trial court directed the jury to disregard benefits or injuries, if any, received by the appellants' remaining property arising from, or due to, traffic regulation or circuity of travel. Appellants objected that no evidence had been presented before the jury in regard to these matters in view of the court's action on the motion in limine, and the instructions resulted in an improper stress and comment upon the results of the case without any evidence to justify it. The instructions follow, generally, the case of Holbrook v. State, 355 S.W.2d 235 (Tex.Civ.App., Eastland 1962, wr.ref. n.r. e.). Further, we fail to see reversible error. Rule 434, Texas Rules of Civil Procedure.

■ The jury, in its answer to Special Issue No. 3, found the market value of the leasehold interest in the remainder immediately after the taking as $88,750.00. The highest evaluation introduced in evidence on this phase of the market value was $86,950.00. It is the appellants' final complaint that if this case be not reversed, then the trial court judgment should be reformed to award damages to the Kers in the amount of $3,050.00, which would be the difference between the jury finding of the before-taking value, and the maximum testimony and evidence in the record as to the after-taking value. While the jury's answer to the after-value was above the range of testimony on that specific issue, the answer was higher than the lowest testimony on the after-value issue and well within the range of the entire testimony. When the jury finds the value of the condemnee's remaining property immediately after condemnation, it is restricted only by the lowest figure testified to. No error is presented. This is the identical situation presented in Maddox v. Gulf, Colorado &' Santa Fe Railway Company, 293 S.W.2d 499 (Tex.Civ.App., Ft. Worth 1956, wr.ref. n.r.e.).

We have considered all points of error presented, and they are overruled.

The judgment of the trial court is affirmed.